IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| P.G.G., <br><br> PLAINTIFF for herself and on behalf of All Others Similarly Situated, <br><br> v. <br><br> HOUSTON NFL HOLDINGS, L.P. D/B/A HOUSTON TEXANS and ALTOVISE GARY, <br><br> DEFENDANTS. | Civil Action <br> FILE NO: _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT – COLLECTIVE ACTION

NOW COMES, PLAINTIFF P.G.G. on behalf of herself and all others similarly situated ("Plaintiffs"), and complains of Defendants, HOUSTON NFL HOLDINGS, L.P. D/B/A/ HOUSTON TEXANS ("Houston NFL Holdings") and ALTOVISE GARY ("Coach Alto") (collectively "Defendants"), for cause of action and would show the Court as follows:

### I.  INTRODUCTION

1. This is primarily a collective action to recover compensation for hours worked but not recorded or paid ("off-the-clock work"), failure to pay minimum wage

1

and failure to pay overtime compensation. In addition, this case is brought for wrongful termination in violation of Texas law. These claims are brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq* ("FLSA") and the Texas Labor Code § 101.003.

2. This lawsuit seeks equitable relief, compensatory and liquidated damages, attorneys' fees, taxable costs of court, pre-judgment and post-judgment interest for Defendants' willful violations.

3. P.G.G. and all others similarly situated demand a jury trial on all issues that may be tried to a jury.

## II. JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 to hear this Complaint and to adjudicate these claims because this action involves a federal question under the FLSA. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 because Defendants operate in this district and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## III. PARTIES

**Plaintiff(s)**

6. Plaintiff, P.G.G., ("Named Plaintiff") is an adult resident of Harris County, Texas.

7. At all material times, Named Plaintiff was an individual employee for the Defendants within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203 and the Texas Labor Code.

8. Defendants employed Named Plaintiff from April 12, 2017 until April 13, 2018 as a cheerleader for the Houston Texans NFL team.

9. Members of the Plaintiff Class are current and former employees of Defendants who work, or have worked, as a cheerleader for the Houston Texans NFL team.

**Defendants**

10. Defendant Houston NFL Holdings is a Delaware limited partnership doing business in Texas. It may be served with process through its registered agent Capitol Corporation Services, Inc. at its registered office, 206 E. 9th Street, Suite 1300; Austin, Texas 78701.

11. At all times relevant hereto Houston NFL Holdings was an employer and covered enterprise as those terms are defined in the FLSA and Texas Labor Code.

12. Coach Alto is an individual and manager of the Houston Texas Cheerleading squad. Upon information and belief, her place of employment is located at NRG Stadium, NRG Pkwy, Houston, TX 77054. At all times relevant hereto, Coach Alto was an employer as those terms are defined in the FLSA and the Texas Labor Code in that she was responsible for the day-to-day operations of the Houston Texas Cheerleading Squad, had operational control over the Houston Texas Cheerleading Squad, and participated in the decisions related to Plaintiffs' compensation. Coach Alto is jointly and severally liable with Houston NFL Holdings for the violations of law detailed in this action.

## IV.     COLLECTIVE ACTION ALLEGATIONS

13. Named Plaintiff files this case as an Opt-In collective action, as is specifically allowed by 29 U.S.C. § 216(b).

14. The class that Named Plaintiff seeks to represent may be described as follows:

> All current and former employees and contractors of Defendants who 1) worked as a Houston Texans Cheerleaders during the class period, and 2) claims that she either (a) failed to receive all of her compensation for work performed but not recorded or paid ("off-the clock"), in violation of 29 U.S.C. 201 *et seq.* and/or (b) failed to be paid minimum wage and/or (c) failed to receive all of her overtime pay, in violation of 29 U.S.C. 201 *et seq.* and seeks payment for such lawfully earned pay.

15. At all times relevant to this action, Defendants have been subject to the requirements of the Fair Labor Standards Act 29 U.S.C. 201 *et seq*.

16. For purposes of this action, the relevant period is defined as such period commencing on the date that is three years prior to the filing of this action, and continuing thereafter.

17. Named Plaintiff, seeks to represent only those members of the above-described group who, after appropriate notice of their ability to opt in to this action, have provided consent in writing to be represented by counsel for Named Plaintiff as required by 29 U.S.C. § 216(b).

18. Those persons who choose to opt in, referred to as the "Plaintiffs' Class", will be listed on subsequent pleadings and copies of their written consents to sue will be filed with the Court.

19. This action is appropriate for collective action status because Defendants have acted in the same manner with regard to all members of the Plaintiffs' Class.

## V.   FACTS

20. The Defendants collectively own, operate, and manage the NFL football team known as the Houston Texans.

21. The Houston Texans are in the business of promoting and playing professional football games.

22. As part of the Houston Texans business, Defendants hire Cheerleaders to perform and appear at Houston Texans football games and other events promoted or sponsored by the team or its affiliates.

23. Named Plaintiff was employed by Defendants as a Cheerleader from April 12, 2017 until April 13, 2018.

24. Named Plaintiff's duties as a Cheerleader included, performing at or attending Games, making Event Performances or Appearances, attending meetings, photo shoots or apparel fittings, rehearsing at scheduled times, or using a Team owned Twitter account during her employment.

25. Named Plaintiff was to be paid $7.25 for each hour spent providing services as a Houston Texans Cheerleader.

26. Although Named Plaintiff was paid for some of the time she spent working as a Texans Cheerleader, she was consistently not paid for the following required activities: (1) being required to tweet every 48 hours during the off-season, (2) being required to tweet multiple times a day during the regular season, (3) being required to continually monitor her email to respond to opportunities to multiple Texans related matters, (4) being required to respond to emails from the Houston Texans Cheerleaders ("HTC") Digital Team and coaches within 10 minutes of any email, Twitter DM,

GroupMe Message and other digital services, (5) being required to spend multiple hours a week in the gym, (6) being required to get a spray tan before every game and every official Texans events, (7) time spent signing thousands of Houston Texans calendars, (8) multiple required events that were unpaid, (9) hundreds of hours spent traveling to and from events around the state, (10) being forced to retweet other cheerleaders, tweeting before every event, tweeting multiple times a game, (11) other activities required by Coach Alto. Essentially, Named Plaintiff and her fellow Cheerleaders were and are on call 24/7.

27. During Named Plaintiff's employment with the Defendants, Plaintiff was required to work overtime hours in excess of a 40-hour workweek.

28. Named Plaintiff, and other Houston Texans Cheerleaders, often worked in excess of 40 hours per week during their employment with the Defendants.

29. Defendants required the Plaintiff and all others similarly situated to perform work, which routinely required them to work overtime hours as defined by the FLSA. Defendants failed to pay them overtime compensation as required by the FLSA.

## VI.  FIRST CLAIM FOR RELIEF

### Failure to compensate for "off-the-clock" work

30. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully written herein.

31. Named Plaintiff and all others similarly situated are considered non-exempt employees under the statutory provisions of the FLSA as well as by the administrative regulations used to interpret it.

32. Defendants failed to compensate Named Plaintiff and all others similarly situated, their entitled pay for all hours they worked in a workweek.

33. Defendants have failed to make a good faith effort to comply with the FLSA, and have willfully and deliberately sought to evade the requirements of the federal statute.

34. Defendants have failed to maintain a complete, accurate, and contemporaneous record of the number of hours worked per workweek by Named Plaintiff and by all other similarly situated employees, as required by law.

35. The Defendants' conduct was willful within the meaning of 29 U.S.C. § 255(a).

36. No lawful exemption excused the Defendants from compensating Named Plaintiff and all others similarly situated for hours worked, but not recorded or paid in a workweek.

37. Defendants knowingly, willfully, or with reckless disregard carried out an illegal pattern and practice of deceptive and fraudulent accounting practices regarding compensation due to Named Plaintiff and to all others similarly situated for hours worked, but not recorded or paid.

38. Named Plaintiff and all others similarly situated seek an amount of back-pay equal to the unpaid compensation for hours worked, but not recorded or paid, from the date they commenced employment for the Defendants until the date of trial.

39. Named Plaintiff and all others similarly situated further seek an additional equal amount as liquidated damages, as well as reasonable attorney's fees and costs as

provided by 29 U.S.C. § 216(b), along with pre-judgment and post-judgment interest at the highest rate allowed by law.

## VII.  SECOND CLAIM FOR RELIEF

### Failure to Pay Minimum Wage

40. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully written herein.

41. Named Plaintiff and all others similarly situated are considered non-exempt employees under the statutory provisions of the FLSA as well as by the administrative regulations used to interpret it.

42. Defendants failed to compensate Named Plaintiff and all others similarly situated at least $7.25 an hour.

43. Defendants have failed to make a good faith effort to comply with the FLSA's minimum wage requirement, and have willfully and deliberately sought to evade the requirements of the federal statute.

44. Defendants have failed to maintain a complete, accurate, and contemporaneous record of the number of hours worked per workweek by Named Plaintiff and by all other similarly situated employees, as required by law.

45. The Defendants' conduct was willful within the meaning of 29 U.S.C. § 255(a).

46. No lawful exemption excused the Defendants from compensating Named Plaintiff and all others similarly situated the minimum wage.

47. Named Plaintiff and all others similarly situated seek an amount of back-pay equal to the unpaid compensation for hours worked, in which minimum wage was

not paid, from the date they commenced employment for the Defendants until the date of trial.

48. Named Plaintiff and all others similarly situated further seek an additional equal amount as liquidated damages, as well as reasonable attorney's fees and costs as provided by 29 U.S.C. § 216(b), along with pre-judgment and post-judgment interest at the highest rate allowed by law.

## VIII.   THIRD CLAIM FOR RELIEF

### Unpaid overtime compensation under the FLSA

49. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully written herein.

50. Named Plaintiff and all others similarly situated are considered non-exempt employees under the statutory provisions of the FLSA as well as by the administrative regulations used to interpret the Act.

51. Named Plaintiff and all others similarly situated are entitled to receive overtime pay for all hours they have worked in excess of 40 during each seven-day workweek.

52. Defendants failed to compensate Named Plaintiff and all others similarly situated, their entitled pay (including overtime pay) for those hours they worked in excess of 40 per week.

53. Defendants have violated the FLSA by failing to compensate the Named Plaintiff and all other similarly situated employees overtime pay for all hours worked in excess of 40 hours per week.

54. Defendants have failed to make a good faith effort to comply with the FLSA, and have willfully and deliberately sought to evade the requirements of the federal statute.

55. Defendants have failed to maintain a complete, accurate, and contemporaneous record of the number of hours worked per workweek by Plaintiff and by all other similarly situated employees, as required by law.

56. The Defendants' conduct was willful within the meaning of 29 U.S.C. § 255(a).

57. No lawful exemption excused the Defendants from compensating Plaintiff and all others similarly situated, overtime pay for hours worked over forty per week.

58. Plaintiff and all others similarly situated seek an amount of back-pay equal to the unpaid overtime compensation from the date they commenced employment for the Defendants until the date of trial.

59. Plaintiff and all others similarly situated further seek an additional equal amount as liquidated damages, as well as reasonable attorney's fees and costs as provided by 29 U.S.C. § 216(b), along with pre-judgment and post-judgment interest at the highest rate allowed by law.

### IX.     FOURTH CLAIM FOR RELIEF

**Collective Action Allegations**

60. Each and every allegation contained in the foregoing paragraph is re-alleged as if fully written herein.

61. Other employees have been victimized by this pattern, practice, and policy of the Defendants that is in violation of the FLSA.

62. Thus, from personal knowledge, Named Plaintiff is aware that the illegal practices and policies of Defendants have been imposed on other workers.

63. Other, similarly situated, employees are being denied their lawful wages.

64. Accordingly, each Defendant's pattern and practice of (1) failing to pay employees for "off-the-clock" work, (2) failing to pay employees minimum wage, and (3) failing to pay the overtime pay (at time and one-half) of employees as required by the FLSA results from the Defendants' general application of policies and practices, and does not depend on the personal circumstances of the Named Plaintiff's class.

65. Plaintiff Named Plaintiff's experience is typical of the experience of the Plaintiff's class as it pertains to compensation.

66. The specific job titles or job requirements of the various members of the class do not prevent collective treatment.

67. All employees, regardless of their job requirements or rates of pay, who were not compensated for "off-the-clock" work, were not paid the minimum wage, or were denied overtime compensation for hours worked in excess of 40 per week, are similarly situated.

68. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

69. All current and former Houston Texans Cheerleaders, who at any time during the three years prior to the date of filing of this action to the date of judgment who were not compensated for "off-the-clock" work, were not paid the minimum wage, or were denied overtime compensation for hours worked in excess of 40 per week, are properly included as members of the class.

## X. FIFTH CLAIM FOR RELIEF

**Wrongful Termination in Violation of Texas Labor Code § 101.003**

70. Defendants cut Named Plaintiff and the other cheerleaders solely in retaliation for their engaging in Protected Activates.

71. The Defendants' termination of Named Plaintiff and the other cheerleaders unlawfully interfered with their right to collectively bargain with their employer.

72. Named Plaintiffs and several other cheerleaders were all members of the Houston Texans Cheerleading Team for the 2017 football season.

73. During the 2017 football season, Coach Alto told one Cheerleader that she had "belly jelly" and she was a "chunky cheek."

74. Before one game during the 2017 football season, Coach Alto took a cheerleader to a secluded area of the stadium and duct taped her stomach skin underneath her shorts. Coach Alto then brought that cheerleader in front of the rest of the squad and showed them how much "better it looks." At the next practice Coach Alto pulled out a roll of duct tape and asked said cheerleader if she needed it.

75. After one game during the 2017 football season, Coach Alto entered into the cheerleader's locker room wielding scissors and slashing hundreds of balloons, which spelled out "HTC" (Houston Texans Cheerleaders), merely because one cheerleader missed a step during a dance, scaring and intimidating many of the cheerleaders.




76. Throughout the 2017 football season, several cheerleaders reported being physically assaulted by fans. They reported these assaults to Coach Alto who, to their knowledge, ever took steps to report the assaults or take steps to insure the cheerleaders' safety.

77. At one point in the 2017 football season, Coach Alto told a cheerleader of Hispanic descent that she could not have straight hair and that if she didn't have curly hair she would "find another Latina girl to replace her."

78. Coach Alto walked up to a cheerleader and poked her face asking her if she had gained her "freshman 15" saying she looked like she "ate a plate of salt."

79. The policies, procedures, and activities of Coach Alto troubled Named Plaintiff and several other cheerleaders. Early in the 2017 football season, Named Plaintiff and several other cheerleaders began acting in a concerted manner in an effort to change Coach Alto's policies, procedures, and activities ("Protected Activities").

80. Shortly after the young women began their Protected Activities, Coach Alto discovered the young women's actions and began treating them worse then the other Cheerleaders. For example, after one cheerleader reported Coach Alto to Human Resources, Coach Alto moved her to the back of every dance and consistently and aggressively harassed her, although she was arguably the squad's best dancer.

81. In April of 2018, Named Plaintiff and the other cheerleaders auditioned to be members of the 2018 Houston Texans Cheerleading Squad.

82. In April of 2018, Named Plaintiff and the other cheerleaders who participated in Protected Activities were all cut from the squad at the last minute during auditions.

83. Defendants cut Named Plaintiff and the other cheerleaders solely in retaliation for their engaging in Protected Activates.

84. The Defendants' termination of Named Plaintiff and the other cheerleaders unlawfully interfered with their right to collectively bargain with their employer for better work conditions.

85. As a direct and proximate cause of the Defendants' unlawful conduct, Named Plaintiff and the other cheerleaders have suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Named Plaintiff, on behalf of herself and all other similarly situated, respectfully requests that upon hearing, the Court grant Named Plaintiff, and all others similarly situated, relief as follows:

a. Declare that Defendants have violated the Fair Labor Standards Act, specifically, 29 U.S.C. § 207, by failing to pay Plaintiff and all others similarly situated, overtime pay at one and one-half times their regular hourly rate for all hours in excess of 40 worked during each seven-day work period, and by failing to compensate employees for work performed, but not recorded or paid;

b. Order Defendants to pay Plaintiff and all others similarly situated, the difference between what they should have paid for overtime hours Plaintiffs worked during the relevant period and what they were actually paid, as well as compensation for hours worked but not recorded or paid, together with an equal amount as to liquidated damages.

c. Order Defendants to pay Plaintiff and all others similarly situated employees' reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

d. Order Defendants to pay pre-judgment and post-judgment interest at the highest lawful rate for all amounts, including attorneys' fees, awarded against Defendant.

e. Plaintiff's actual damages incurred as a result of Defendant's wrongful termination.

    f.    Order further relief, whether legal, equitable, or injunctive, as may be necessitated to effectuate full relief to Named Plaintiff, and to all other similarly situated employees of the Defendants.

Named Plaintiff, and all other similarly situated, make a formal demand for a jury trial in this matter.

Respectfully submitted,

**JONES, GILLASPIA & LOYD, L.L.P.**

**BY**:   */s/ Bruse Loyd*
Bruse Loyd
Texas Bar No. 24009032
SDTX 23240
4400 Post Oak Pkwy, Suite 2360
Houston, Texas 77027
Telephone:  713.225.9000
Facsimile:  713.225.6126
Email:  bruse@jgl-law.com

**ATTORNEYS FOR THE PLAINTIFFS**